IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:21-CV-02069-RM-STV

JASON GANN, on his own behalf and
on behalf of all others similarly situated,

    Plaintiffs,

v.

GARDA CL NORTHWEST d/b/a
GARDAWORLD,

    Defendant.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

COME NOW the Parties, through undersigned counsel, to submit this Joint Motion for Preliminary Approval of Class Action Settlement and to respectfully request that the Court:

1. Certify a stipulated class action under the Colorado Minimum Wages of Workers Act (the "CMWWA") C.R.S. §§ 8-6-101 *et seq.* (as implemented by the Colorado Minimum Wage Order (the "MWO") 7 CCR 1103-1 and the Colorado Overtime and Minimum Pay Standards Order (the "COMPS") 7 CCR 1103-1 (2020)) and Fed. R. Civ. P. 23 defined as:

> ALL INTRASTATE HOURLY LOCAL DRIVERS AND MESSENGERS WHO WORKED FOR DEFENDANT AT THE COLORADO SPRINGS OR GRAND JUNCTION TERMINAL FROM JUNE 28, 2015 TO DECEMBER 31, 2020.

2. Grant preliminary approval to the Parties' Settlement Agreement and Notice (Exhibit 1); and

3. Set a final fairness hearing at the Court's earliest convenience at least 60 days after the date on which the Court grants this Motion.

## PROCEDURAL HISTORY

Plaintiff filed this action for unpaid wages on June 28, 2021, in the District Court for the City & County of Denver, and Defendant timely removed to this Court on July 30, 2021. Plaintiff alleges that Defendant failed to pay its intrastate drivers overtime for hours worked in excess of 40 hours per work week but less than 50 hours per work week at each of Defendant's three locations in Colorado: Colorado Springs, Grand Junction, and Denver. ECF No. 4. Plaintiff pleaded Fed. R. Civ. P. 23 class violations of Colorado wage statutes and related regulations (collectively, "Class Claims").

Defendant denies the allegations in Plaintiff's Class Complaint and denies that it engaged in any wrongdoing. ECF. No. 38. In addition, on April 20, 2023, Defendant moved to dismiss (ECF No. 36) the claims relative to the Denver employees, who are members of the Branch 230-30 Denver Driver's Association, which Association entered into a Driver Association Collective Bargaining Agreement (including the prior iterations of that agreement). On August 16, 2024, the Court denied the motion to dismiss without prejudice. ECF No. 50.

In addition to an early mediation, which did not result in settlement, the parties have conducted full discovery related to the facts underlying certification. Following this discovery, the Parties re-engaged in settlement discussions, which have proved successful.

The Parties' settlement contemplates a stipulated Fed. R. Civ. P. 23 class under C.R.S. §§ 8-6-101, *et seq.*, as to Plaintiff's Class Claims involving the Grand Junction and Colorado Springs locations. The parties request that the Court certify their stipulated Rule 23 Class for

2

purposes of settlement, grant preliminary approval to their Settlement Agreement and Notice (Exhibit 1), and set a final fairness hearing at which arguments for and against final approval might be heard.

## SUMMARY OF THE SETTLEMENT TERMS

To determine the value of the Plaintiff's and each Class Member's claims, Defendants accessed and reviewed available time-worked and wage payment records for the 43 putative Class Members. Plaintiff reviewed Defendant's calculations for accuracy, checking the calculations against a randomly-selected sampling of Class Members' underlying wage and hour data. Plaintiff also reviewed documents related to Defendant's policies related to the payment of overtime and related to the Collective Bargaining Agreement, and Plaintiff deposed Defendant's designated witness under Rule 30(b)(6) related to these issues.

Based on the wage and hour records and Defendants' verified computations, and taking into account the risks and costs of continued litigation, the Parties negotiated the Settlement Agreement attached hereto as Exhibit 1. The parties believe the agreement to be a fair and reasonable settlement of the Class Claims.

**Settlement Fund**. The settlement provides that Defendants will make a single payment of $142,000.00, less any Reduction Amount as defined *infra*, into a Settlement Fund to be administered by a Class Administrator to compensate Plaintiff and the Members of the Class who do not opt-out for their damages, inclusive of attorney fees and costs and incentive awards to the representative Plaintiff.

**Settlement Class**. For settlement purposes and to facilitate settlement of Plaintiff's claims, the Parties stipulate to the certification of a Fed. R. Civ. P. 23 class as:

3

ALL INTRASTATE HOURLY LOCAL DRIVERS AND MESSENGERS WHO WORKED FOR DEFENDANT AT THE COLORADO SPRINGS OR GRAND JUNCTION TERMINAL FROM JUNE 28, 2015 TO DECEMBER 31, 2020.

**Reduction Amount.** The amount of the total Settlement Payment shall be reduced by an amount equal to the amount due each Rule 23 Class Member that timely opts-out of the Action (the "Reduction Amount"). Any reduction of the Settlement Payment made pursuant to this subsection will not operate to reduce the amount of attorney fees (to be calculated at 33 1/3% of $142,000.00), nor will any reduction of the Settlement Payment made pursuant to this subsection operate to reduce the agreed-to service award.

**Payment to the Class Members**. The parties propose that within ten (10) business days after the Court's final approval of the agreement, Defendant will pay the Settlement Amount less any Reduction Amount to the Class Administrator. The Administrator will then issue payment based on each Member's pro-rata share of unpaid overtime wages based on the total number of overtime hours worked but not paid at the overtime rate. These payments will be mailed to Class Members by the Class Administrator to each Class Member's last known address, such addresses to be provided by Defendant. The Class Administrator shall withhold the Employee's portion of any taxes and other obligations, and these payments will be reported on an IRS Form W2 issued by the Administrator to the Class Members at the conclusion of the tax year in which the payments are made, and will be subject to any and all applicable local, state and federal withholding taxes.

Defendant will be solely responsible for, separately and in addition to the Settlement Payment, the employer's share of any payroll taxes that would have been paid by the employer in the normal course.

**Service Award**. In recognition of Plaintiff's work on behalf of the Class and the risk taken by the Named Plaintiff in initiating this Litigation, the Parties have agreed to the payment of a service award to the Named Plaintiff and Rule 23 Class Representative in the amount of $10,000.00, to be paid from the Settlement Fund.

**Class Administration** – The Class Administrator's fee will be paid from the Settlement Fund. Subject to Court approval, the Plaintiff has selected Optime Administration as Class Administrator.

**No Reversion** - There shall be no reversion of unclaimed settlement funds.

i.  **Checks Uncashed After 90 Days** – In the event that a check issued pursuant to this paragraph 2 of the Agreement is not cashed within ninety (90) days after issuance, the Class Administrator will redistribute all such unclaimed funds to those Class Members who have cashed their settlement checks, dividing such aggregate unclaimed amounts proportionate to each claiming Class Member's percentage share. Should funds remain after the redistribution, such funds shall be distributed cy pres to the Denver Public Schools Foundation.

ii.  For purposes of calculating the employer's portion of any taxes, the Class Administrator shall prepare a report for the Defendant identifying those Class Members who cashed checks issued pursuant to paragraph 2 of the Agreement, including the amount paid to such Class Member withheld for any category of taxes.

**Sequence of Payment**. Within ten (10) business days after the Court's Preliminary Approval of this Agreement, the Class Administrator will print and mail the Court-approved Notice and Opt-Out Form to all individuals in the Settlement Class. All mailings by the Class Administrator shall be by U.S. first-class mail, postage prepaid. Any Notices and Opt-Out Forms

5

returned to the Class Administrator as non-delivered shall be sent to any forwarding address affixed thereto. If no forwarding address is provided, the Class Administrator shall attempt to determine a correct address using reasonably available means and will then attempt to send the Notice and Opt-Out Form to the new address within five business days of receiving notification that the Notice and Opt-Out Form was undeliverable.  Members of the Settlement Class shall have forty-five (45) days from the date of mailing to opt-out of and/or object to the Settlement.

**Fairness Hearing**.  The Parties shall ask the Court to set a final fairness hearing at least sixty (60) days after the Court's preliminary approval of the Settlement, so that any objectors to the Settlement may be heard. Within ten (10) business days of the Court's final approval of this agreement, the Class Administrator shall distribute all payments as set forth in the Agreement.

**Release**.  Upon the Effective Date of the Settlement, the Class Representative and Settlement Class Members fully release and forever discharge Defendant, and its past and present parent franchisors, companies, subsidiaries, Affiliates, divisions, related entities, shareholders, managers, members, directors, trustees, officers, employees, former employees, agents, insurers, attorneys, predecessors, successors and assigns, and all other persons acting in concert with or on behalf of Defendant (Defendant and the foregoing other persons and entities are hereinafter referred to collectively as the "Releasees"), from any and all claims, rights, demands, liabilities, obligations, costs, expenses, and causes of action of every nature and description, whether known or unknown, arising on or before June 28, 2015, arising out of, based on, or encompassed by: (a) the claims that were asserted in the Lawsuit; (b) claims that relate to unpaid wages; (c) claims that relate to unpaid overtime; (d) claims that relate to unpaid compensation, including bonuses; (e) claims that relate to or arise out of the reimbursement of

6

expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; (f) claims that relate to or arise out of the payment of the applicable minimum wage, under-payment of the applicable minimum wage, or failure to pay the applicable minimum wage; (g) claims that relate to or arise out of the entitlement to meal or rest periods or pre- and post-shift work; or (h) claims that arise under the Fair Labor Standards Act (FLSA), the Colorado Wage Claim Act (CWCA), the Colorado Minimum Wage Act (CMWA), the Colorado Minimum Wage Order, the Colorado Overtime and Minimum Pay Standards Order, or any similar federal, state, municipal or local wage and hour laws (collectively, the "Released Claims").

In addition, Named Plaintiff hereby irrevocably and unconditionally forever and fully releases and covenants not to sue or otherwise pursue claims against Defendant and all Released Parties from any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorneys' fees, costs actually incurred, and liquidated damages), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Parties, arising out of any matter occurring or accruing on or before the date he or she signs this Agreement ("General Release"). This General Release includes, but is not limited to, any claims arising from their employment and/or contractual relationship, or the termination of their employment and/or contractual relationship, with Defendant and/or any of the Released Parties. This General Release includes, but is not limited to: claims arising under COMPS Orders; claims arising under federal law; including, inter alia, claims under the Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and the FLSA; claims arising under the laws of any state or

local government; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, interest, expenses, or attorney's fees; claims that were asserted or that could have been asserted in this Civil Actions; and any other claims of any kind, except as expressly excluded elsewhere in this Agreement.

ARGUMENT

## I. The Court Should Certify the Stipulated Settlement Class for Purposes of Settlement.

The Parties seek certification of the Class relating to Plaintiff's claims for unpaid wages under the CMWA/COMPS. The parties stipulate to the certification of a Rule 23(a) class defined as:

> ALL INTRASTATE HOURLY LOCAL DRIVERS AND MESSENGERS WHO WORKED FOR DEFENDANT AT THE COLORADO SPRINGS OR GRAND JUNCTION TERMINAL FROM JUNE 28, 2015 TO DECEMBER 31, 2020.

Parties may request the certification of a class in their motion for preliminary approval of the settlement agreement. To satisfy the requirements of Rule 23(a), the Parties must show that "(1) the class is so numerous that joinder of all members is impracticable [(numerosity)]; (2) there are questions of law or fact common to the class [(commonality)]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(typicality)]; and (4) the representative parties will fairly and adequately protect the interests of the class [(adequacy)]." Fed. R. Civ. P. 23. Then, to certify a damages class under Rule 23(b)(3), the Parties must show that the class meets two additional requirements: (1) "that the questions of law or fact common to the class members predominate over any questions affecting only

8

individual members" (predominance), and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," (superiority). Fed. R. Civ. P. 23(b)(3).

Here, the Parties have presented sufficient information for this Court to certify the Class. Plaintiff has alleged (and the Parties agree for purposes of obtaining approval of the Settlement Agreement only) that Class Members (1) are or were (during the relevant time) employed as hourly intrastate drivers and messengers for Defendants; and allege that Defendants failed to pay overtime wages for hours worked in excess of 40 hours but less than 50 hours in a work week. ECF No. 1. Defendants do not contest such allegations for purposes of this Motion. These allegations are sufficient to show that the Class Members are similarly situated under the CMWA and its related regulations. Therefore, the Court should certify the Class Action for purposes of effecting preliminary and final approval of the Settlement Agreement.

### A. The Court Should Grant Preliminary Approval Because The Parties Have Made The Required Showing That The Rule 23 Factors Are Met.

A class action under Rule 23 may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. P. 23(e). The object of preliminary approval is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing"); *In re Motor Fuel Temperature Sales Practices Litig.*, 2011 WL 4431090, at \*5 (D. Kan. Sept. 22, 2011) (internal

9

quotation omitted) ("The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."). If the settlement is preliminarily approved, the Court enters a preliminary approval order directing the preparation of notice to class members and setting forth a schedule for objections.

At this stage, the Court should make the preliminary determination that the proposed Class satisfies the four requirements of Rule 23(a) and Rule 23(b)(3), subject to a final determination at the fairness hearing. *See* Manual for Complex Litigation § 21.632; *In re Motor Fuel Temperature Sales Prac. Litig.*, 258 F.R.D. at 678–80; Pliego, 313 F.R.D. at 125. Each of these requirements is addressed below.

### 1. The Rule 23 Class Is Sufficiently Numerous

To satisfy Rule 23's numerosity requirement, the class must be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no bright line number at which the members of a class become "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). *See Box Elder Kids, LLC v. Anadarko E&P Onshore, LLC*, 343 F.R.D. 215, 218-19 (D. Colo. 2022). Some courts have held that there are certain thresholds at which numerosity can be presumed. *See Stewart v. Abraham*, 275 F.3d 220, 226–227 (3d Cir. 2001) (presuming numerosity at 40 members); *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same). The Tenth Circuit, however, has specifically refused to adopt such a presumption. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Instead, the Tenth Circuit has instructed district courts to conduct a "fact-specific inquiry" into the "factors

that enter into the impracticability issue." *Colo. Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014).

Here, there are 43 putative members of the Class. Each of the putative class members worked at either Defendant's Grand Junction location or its Colorado Springs location, making joinder in one action difficult. The length of the applicable time period—from June 28, 2015 to December 31, 2020—likely means that putative class members either moved within the state or moved outside of Colorado. Further, several putative class members would allege less than $1,000 in total damages. Accordingly, the total number of putative class members, the geographic distribution of the class members, and relatively small dollar amount in damages for some class members renders joinder impracticable. The numerosity factor is therefore satisfied.

### 2. The Commonality Requirement Is Met

The proposed class features basic questions of law and fact that are common to every member of the class: Whether Defendant paid each putative class member, all intrastate drivers, overtime for hours worked in excess of 40 hours per work week but less than 50 hours per work week at Defendant's locations in Grand Junction and Colorado Springs. "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194- 1195 (10th Cir. 2010); *Bass*, 2011 WL 2149602 *2-3 (similar common questions justified certification of Colorado Minimum Wage Act class action). The proposed Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### 3. The Typicality Requirement Is Met

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *In re Qwest Savings And Investment Plan ERISA Litigation*, No. 02-

RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-15 (D. Colo. Sept. 24, 2004). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiff challenges Defendant's application of an alleged non-payment of overtime wages for hours worked between hour 40 and hour 50 in each work week, conduct Plaintiff claims was universally applied to the proposed class of employees. Because Plaintiff's claims challenge the same conduct under the same legal and remedial theories as do the claims of the absent class, their claims are typical of the class's claims under Fed. R. Civ. P. 23(a)(3).

### 4. Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that the representative parties to a class action fairly and adequately protect the interests of the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez*, 268 F.R.D. at 396-397 (internal citation omitted). Resolution of two questions determines legal adequacy: (1) does the named plaintiff and their counsel have any conflicts of interest with other class members and (2) will the named plaintiff and their counsel prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quotation omitted). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy ofrepresentation should be resolved in favor of upholding the class, subject to later possible reconsideration[.]" *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

      a. The Named Plaintiff and Counsel Have No Conflicts of Interest with Other Class Members.

The Named Plaintiff has the same interest in vindicating their wage rights as do absent members of the putative class. Nor does Plaintiff's counsel have any conflict of interest with the members of the putative class. Where, as here, there is no divergence between the interests of the Plaintiff, their counsel and of the class, the first element of Rule 23(a)(4) is satisfied. *Belote v. Rivet Software, Inc., No.* 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *3 (D. Colo. May 28, 2013).

      b. Named Plaintiff and Counsel Will Prosecute this Action Vigorously on Behalf of the Class.

Plaintiff selected specialized counsel with extensive experience in litigating the minimum labor standards claims of low-wage workers. Plaintiff's counsel has successfully served as class counsel in numerous certified Rule 23 class actions similar to this one. "[T]he experience of the proposed class representative's chosen counsel in similar previous litigation has been held an important factor favoring adequacy of representation. With regard to whether a lead plaintiff and its counsel will vigorously prosecute the action on behalf of the class, 'the experience and competence of the attorney representing the class may inform the court's analysis.'" *United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted). Plaintiff and their counsel have and will continue to prosecute this action vigorously on behalf of the class.

**B. The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(b)(3).**

Because the questions of law and fact common to class members predominate over individual issues, and because the class action is the superior method for adjudicating this case,

the proposed class satisfies the requirements of Fed. R. Civ. P. 23(b)(3). In deciding predominance under Rule 23(b)(3), the Court "must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members… Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *United Food and Commercial Workers Union*, 281 F.R.D. at 655 (quotation omitted).

This case involves a controversy spanning Defendant's intrastate drivers allegedly not paid overtime wages to which they were entitled. The representative Plaintiff's claims and those of the class arise from the same legal grievances, and questions common to these claims regarding whether Defendant's non-payment of overtime wages violated the law will be litigated repetitively if these claims are not aggregated. "In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims." *Bass*, 2011 WL 2149602 *3-4.

The class action is a superior method of adjudicating the instant case because the absent class members have shown no interest in controlling the litigation of separate actions; because no other litigation regarding this controversy has been commenced; and because concentration of claims here is desirable as the Defendant does business in and all claims arose in this judicial district. Fed. R. Civ. P. 23(b)(3)(A)-(C). The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers.

Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote*, 2013 WL 2317243 *4; *Maez,* 268 F.R.D. at 397*; Cook v. Rockwell International Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998). The class action is thus the superior vehicle for the fair and efficient settlement of this controversy. Fed. R. Civ. P. 23(b)(3).

**II.     The Court Should Approve the Settlement Agreement as Fair and Reasonable for the Purposes of Federal Rule of Civil Procedure 23.**

Rule 23 class claims may only be settled with the Court's approval. Fed. R. Civ. P. 23(e). The authority to approve a settlement of a class action suit is committed to the sound discretion of the trial court, and settlement approval will not be set aside absent an abuse of discretion. *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984). Courts apply the following factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable and adequate:

(1)     Whether the proposed settlement was fairly and honestly negotiated;

(2)     Whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt;

(3)     Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     Whether the parties' judgment is that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

**A.     The Proposed Settlement was Fairly and Honestly Negotiated.**

This case was litigated, and the proposed settlement was reached, in the context of Plaintiff's federal class action lawsuit. The parties were represented by counsel with extensive experience in wage and hour class litigation. The parties reviewed available time-worked and

15

wage payment records. The Parties agreed to engage in early settlement negotiations and exchanged a large volume of timekeeping and wage payment data in preparation for mediation. The parties later conducted full-scale discovery, including depositions of the parties. Settlement negotiations were contested and contentious. Counsel utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable compromise.

### B. Serious Questions of Law Exist.

Serious questions regarding the ability to litigate the Claims exist because of the provisions in a collective bargaining agreement and individual alternative dispute resolution agreements. *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1753 (2011). The Denver employees are members of the Branch 230-30 Denver Driver's Association, which Association entered into the Driver Association Collective Bargaining Agreement, including the prior iterations of that Agreement. That agreement contains a mandatory dispute resolution process, including an arbitration provision. In addition, beginning in 2019, Defendant and each employee, including those in Colorado Springs and Grand Junction, entered into individual alternative dispute resolution agreements that also included an arbitration provisions.

### C. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.

As above, the Parties face risk regarding the availability of arbitration and the potential for protracted appellate practice. In addition, Defendant contests the amount of overtime allegedly owed each Class Member. The value of including all employees of Colorado Springs and Grand Junction and the contested scope of damages recoverable, make the immediate recovery provided by the Settlement outweigh the possibility of future relief.

### D. It is the Parties' Judgment that the Settlement is Fair and Reasonable.

The Parties, with the advice of experienced counsel, are confident that the settlement is fair and reasonable. The Court should approve the settlement as fair and reasonable for the purposes of Rule 23.

## III. The Service Award is Reasonable.

Representative plaintiffs are eligible for reasonable incentive payments as part of class action settlements. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $10,000.00 service award here is appropriate because Class Representative Jason Gann took a substantial risk in coming forward with reports of Defendant's wage and hour law violations when no other employees were willing to do so. Plaintiff materially assisted counsel in reviewing documents, communicating with class members and bringing the case to a successful conclusion to the benefit of all of their co-workers. The Class Representative was also compelled to testify by deposition. The modest incentive award sought here is reasonable. *See*, *e.g.*, *Ramirez et al. v. El Tapatio, Inc. et al.,* Case No. 13-cv-00861-REB- BNB, Doc. No. 58 (D. Colo. 2013) (approving $10,000.00 incentive award to class representative in wage class action); *Van Vranken*, 901 F. Supp. at 300 (approving $50,000 participation award to a single class representative); *Glass v. UBS Fin. Servs., Inc*., 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)

17

(approving incentive awards of $25,000 to each named plaintiffs in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

### IV.    The Court Should Order the Parties to Issue the Settlement Notice.

Preliminary approval of the Settlement Agreement will enable any approved settlement notice and claim documents to be sent to the Class Members in a manner best calculated to ensure they are alerted to the terms of the settlement. Every worker who elects to participate in this case because of the settlement notice will know exactly the nature of this Rule 23 lawsuit, what they are getting, and what they are giving up, allowing them to make an informed decision to participate. The Parties' proposed Notice—which will be sent by the Settlement Administrator via first class mail—provides the Class Members with adequate notice of their rights under the Agreement. For these reasons, the Court should approve the Parties' proposed Class Notice and associated forms and procedures.

The Court should therefore order the parties to issue the Settlement Notice and form attached hereto in Exhibit 1.

### CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court:

1. Certify a stipulated Fed. R. Civ. P. 23 Settlement Class defined as:

    ALL INTRASTATE HOURLY LOCAL DRIVERS AND MESSENGERS WHO WORKED FOR DEFENDANT AT THE COLORADO SPRINGS OR GRAND JUNCTION TERMINAL FROM JUNE 28, 2015 TO DECEMBER 31, 2020.

2. Grant preliminary approval to the Parties' Settlement Agreement and Notice

(Exhibit 1); and

3. Set a final fairness hearing at the Court's earliest convenience at least 60 days after the date on which the Court grants this Motion.

Dated: November 22, 2024.

Respectfully submitted,

| MILSTEIN TURNER, PLLC | HOLLAND & KNIGHT LLP |
|---|---|
| *s/ Brandt Milstein* | *s/ Leah Capritta* |
| Brandt Milstein | Leah E. Capritta |
| 2400 Broadway, Suite B | 1801 California Street, Suite 5000 |
| Boulder, CO 80304 | Denver, CO 80202 |
| 303.440.8780 | 303.974.6466 |
| brandt@milsteinturner.com | Leah.Capritta@hklaw.com |
| *Attorney for Plaintiff Jason Gann* | *Attorney for Defendant Garda CL Northwest d/b/a Garda World* |